UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

JOHN BROOKS,

                        Plaintiff,

        -against-                                    6:16-CV-1427 (LEK/ATB)

CITY OF UTICA,

                        Defendant.

_____

**MEMORANDUM-DECISION AND ORDER**

**I.    INTRODUCTION**

        Plaintiff John Brooks commenced this action against Defendant City of Utica alleging

religious discrimination and retaliation in violation of Title VII of the Civil Rights Act of 1964,

42 U.S.C. § 2000e *et seq.*, and the New York State Human Rights Law ("NYS HRL"), N.Y.

Exec. Law § 296. Dkt. No. 1 ("Complaint"). Presently before the Court is Defendant's motion

for judgment on the pleadings. Dkt. No. 11 ("Motion"); see also Dkt. No. 11-4

("Memorandum"). Plaintiff opposes the motion, Dkt. No. 14 ("Response"), and Defendant filed a

reply, Dkt. No. 18 ("Reply"). For the following reasons, Defendant's Motion is granted in part

and denied in part.

**II.    BACKGROUND**

    **A.  Factual Background**

        Plaintiff has worked for Defendant as a firefighter-paramedic since around August 16,

2006, and he has been a practicing Nazirite since 2014. Compl. ¶¶ 15–16. An integral part of

Plaintiff's religious observance is not cutting his hair. Id. ¶ 18, Ex. D. Around January 17, 2015,

Plaintiff informed Deputy Chief Michael Wusik that he was a practicing Nazirite and requested a reasonable accommodation for his religious beliefs. Id. ¶ 20, Ex. C.

On or about January 21, 2015, Lieutenant Fasolo inspected Plaintiff's uniform, and Deputy Chief John Kelly ordered him to cut his hair by January 25, 2015, "or face the possibility of being relieved of duty." Id. ¶¶ 21–22, Ex. D.[1] Plaintiff immediately submitted a "special report" to Kelly explaining his religious beliefs and requesting a reasonable accommodation. Id. ¶ 24, Ex. D. Plaintiff followed up with an email to Kelly citing the City of Utica Employee Handbook, which indicated the availability of accommodations for sincerely held religious beliefs. Id. ¶ 25, Ex. E. Plaintiff also requested permission to contact the department head about obtaining an accommodation. Id. Ex. E. The next day, Plaintiff met with his designated harassment officer, Lori Wrobel Rockwell. Id. ¶ 26. Rockwell told Plaintiff that, according to Defendant's Assistant Corporation Counsel, the reasonable accommodation policy did not apply to the Utica Fire Department. Id. ¶ 27. For this reason, Rockwell would not allow Plaintiff to file a discrimination complaint. Id.

Around January 25, 2015, Kelly delivered a letter to Plaintiff from Assistant Chief George Clark ordering Plaintiff to cut his hair. Id. ¶ 28, Ex. F. The letter cited safety concerns and Defendant's grooming standards. Id. Ex. F. It also instructed Plaintiff to return to Clark's office on January 29, 2015, and noted that if Plaintiff did not comply, he may face disciplinary action. Id. Plaintiff then met with Clark, who "interrogated Plaintiff about his religious beliefs,

---

[1] It is not clear from the Complaint whether these events occurred in 2015 or 2016. Compare Compl. ¶ 20, with id. ¶ 22. Based on the exhibits attached to the Complaint, the events appear to have begun in 2015. Id. Exs. C–D. Regardless, this inconsistency is not relevant to Defendant's Motion.

questioned that Nazirites are prohibited from cutting their head hair [and] accused Plaintiff of being 'anti-establishment.'" Id. ¶ 30. Clark also "ordered Plaintiff to wear an ill-fitting baseball cap" until Defendant's Corporation Counsel researched the need to accommodate Plaintiff's religious beliefs. Id. Clark further said the order to wear the baseball cap was not an accommodation. Id. ¶ 31.

Following this meeting, Plaintiff "was subjected to daily uniform inspections and threats of disciplinary action despite his repeated requests for an accommodation." Id. ¶ 32. On or about May 1, 2015, Plaintiff reported to Clark's office, where he was ordered to wear a hairnet at all times and reminded that the daily inspections would continue. Id. ¶¶ 33–35. Plaintiff also received written orders requiring him to "wear[] a hair restraint/net" or hair "bands." Id. Ex. G. These written orders noted "numerous complaints regarding [Plaintiff's] appearance" and stated that the complaints "involve[d] the perceived lack of professional appearance while on duty." Id. Clark told Plaintiff that "failure to [restrain your hair] may result in disciplinary action," and that "if it is determined [Plaintiff is] not a Nazarite or [has] in fact never been a Nazarite, disciplinary action may also occur." Id.

On or about May 5, 2015, Plaintiff sent a letter to Rockwell about the ongoing harassment. Id. ¶ 38. Plaintiff asked Rockwell to accept his complaint of discrimination and open an investigation into his claims. Id. After several phone calls and personal visits to Rockwell's office, Plaintiff was given a complaint form. Id. ¶ 39. Around June 1, 2015, "Plaintiff filed a written complaint with Rockwell." Id. ¶ 40. Defendant never formally responded to the complaint, and did not investigate his claims. Id. ¶¶ 41–42. Over two weeks later, Plaintiff sent

an email to "all members of the Corporation Counsel and . . . Rockwell" asking about his complaint and requests for accommodation. Id. ¶ 44.

After he received the email, Wusik confronted Plaintiff at the firehouse and stated, "you have no respect for yourself or your father." Id. ¶¶ 45–47.[2] He then tapped Plaintiff on the head with an envelope and said, "I don't understand guys like you." Id. ¶ 47. Wusik "smirked and scoffed when Plaintiff . . . attempted to explain that his religious beliefs prevented him from cutting his . . . hair." Id. ¶ 48.

On or about June 19, 2015, Plaintiff sent a letter to the Mayor of Utica outlining his struggle to obtain an accommodation for his religious beliefs. Id. ¶ 49. In the letter, Plaintiff mentioned that "[a]fter a few work days of wearing a hairnet to work, I found that it was unsafe for me to operate my air tank while wearing it. I have refused to wear it since." Id. Ex. H. Plaintiff also notes in the Complaint that since 2014, Defendant has employed three to four female firefighters who all have the same or similar duties as Plaintiff. Id. ¶¶ 50–51. These female firefighters' hair is as long as or longer than his, and they are not punished for that or required to wear hairnets or baseball caps. Id. ¶¶ 52–55. Nor are they subjected to constant threats of discipline or singled out for daily inspections and monitoring. Id. ¶¶ 56–57. Under Defendant's grooming policy, female firefighters with long hair must wear a ponytail while on duty, but can wear their hair down while not on calls. Id. ¶¶ 58, 60. Plaintiff, on the other hand, wears his hair in a ponytail at all times. Id. ¶ 59. In addition to these gender differences in grooming policy enforcement, Plaintiff indicates that "[o]ther religious accommodations for other faiths are commonly made by [Defendant]." Id. Ex. D. Plaintiff stresses that Defendant's

---

[2]  Plaintiff's father is the fire chief for the Utica Fire Department. Mem. at 2 n.1.

policy is to reasonably accommodate an employee's sincerely held religious beliefs if they conflict with grooming standards. Id. ¶ 62. Further, while Defendant initially raised safety concerns regarding Plaintiff's hair, it never determined whether the length of Plaintiff's hair interfered with safety equipment. Id. ¶ 66.

Around June 20, 2015, after Plaintiff filed a verified complaint with the New York State Division of Human Rights ("NYS DHR"), he attended a meeting with his union representative and Defendant's outside legal counsel. Id. ¶ 67. At the meeting, Defendant's counsel told Plaintiff there would be no investigation into his complaints and compared his request for an accommodation to "a paraplegic asking for an accommodation to become a firefighter." Id. ¶ 68.

About one month later, Plaintiff served a notice of claim on Defendant, alleging religious discrimination and retaliation. Id. ¶ 69. On or about May 24, 2016, at a hearing conducted pursuant to New York General Municipal Law section 50-h, Defendant questioned Plaintiff under oath about the allegations in the notice of claim. Id. ¶ 70. Plaintiff's requests for a reasonable accommodation are still outstanding. Id. ¶ 71.

### B.  Procedural Background

Plaintiff filed his Complaint on December 2, 2016. Compl. Defendant answered on January 31, 2017, and later filed an amended answer. Dkt. No. 7 ("Answer"); Dkt. No. 9 ("Amended Answer"). Defendant then moved for judgment on the pleadings on February 24, 2017. Mot. Defendant argues that Plaintiff's discrimination, retaliation, and hostile work environment claims must be dismissed because he has not alleged an adverse employment action. Mem. at 6, 11, 20. Defendant also argues that it provided Plaintiff with a reasonable

accommodation, and that the state claims under the NYS HRL should be dismissed in the event that their corresponding federal claims are dismissed. Id. at 24.

### III.    LEGAL STANDARD

In considering a motion for judgment on the pleadings under Federal Rule of Civil Procedure 12(c), courts "employ[] the same standard applicable to dismissals" under Rule 12(b)(6). In re Thelen LLP, 736 F.3d 213, 218 (2d Cir. 2013) (alteration in original) (quoting Johnson v. Rowley, 569 F.3d 40, 43 (2d Cir. 2009)). Thus, a court must "accept all factual allegations in the complaint as true and draw all reasonable inferences in [the plaintiff's] favor." Johnson, 569 F.3d at 43. "[A] complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 663 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). A complaint may be dismissed only where it appears that there are not "enough facts to state a claim to relief that is plausible on its face." Twombly, 550 U.S. at 570. Plausibility requires "enough fact[s] to raise a reasonable expectation that discovery will reveal evidence of [the alleged misconduct]." Id. at 556. The plausibility standard "asks for more than a sheer possibility that a defendant has acted unlawfully." Iqbal, 556 U.S. at 678 (citing Twombly, 550 U.S. at 556).

IV.     **DISCUSSION**[3]

   **A. Disparate Treatment**

Under Title VII, it is "an unlawful employment practice for an employer . . . to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). In an employment discrimination action, the plaintiff bears the initial burden of proving, by a preponderance of the evidence, a prima facie case of discrimination. St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 506–10 (1993). This initial burden is "minimal." Id. at 506.

In order to set forth a prima facie case of disparate treatment in violation of Title VII, a plaintiff must allege that: "(1) she is a member of a protected class; (2) her job performance was satisfactory; (3) she suffered adverse employment action; and (4) the action occurred under conditions giving rise to an inference of discrimination." Demoret v. Zegarelli, 451 F.3d 140, 151 (2d Cir. 2006) (citing McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973)). If the plaintiff makes out a prima facie case, "the burden shifts to the defendant to articulate 'some

---

[3]  Defendant attaches several exhibits to its amended answer and motion. Am. Answer; Mot. Plaintiff does not object to these attachments. Resp. "In deciding a motion under Rule 12(c), [a] district court may consider only the contents of the pleadings themselves, documents attached to the pleadings as exhibits or incorporated by reference, and items of which judicial notice may be taken." Daniels ex rel. Daniels v. Comm'r of Soc. Sec., 456 F. App'x 40, 41 (2d Cir. 2012). Moreover, "[a] court may consider a document that is not attached as an exhibit to a pleading or incorporated by reference into the complaint if the complaint "'relies heavily upon [the document's] terms and effect,' thereby rendering the document 'integral' to the complaint." Grecco v. Assoc. Press, No. 16-CV-6240, 2017 WL 2913501, at *2 (S.D.N.Y. July 7, 2017) (second alteration in original) (quoting DiFolco v. MSNBC Cable, LLC, 622 F.3d 104, 111 (2d Cir. 2010)). "The reliance must be substantial." Fine v. ESPN, Inc., 11 F. Supp. 3d 209, 221 (N.D.N.Y. 2014) (Kahn, J.). Since there is no indication that Defendant's exhibits fall into any of these categories, the Court will not consider them in deciding its Motion.

legitimate, non-discriminatory reason' for its action." Holcomb v. Iona Coll., 521 F.3d 130, 138 (2d Cir. 2008) (quoting McDonnell Douglas Corp., 411 U.S. at 802). "If such a reason is provided, [the] plaintiff may no longer rely on the presumption raised by the prima facie case, but may still prevail by showing, without the benefit of the presumption, that the employer's determination was in fact the result of [unlawful] discrimination." Id.

A complaint alleging employment discrimination is subject to a "lowered standard of review . . . at the motion to dismiss stage." Ingrassia v. Health & Hosp. Corp., 130 F. Supp. 3d 709, 719 (E.D.N.Y. 2015). "[A] discrimination complaint need not allege facts establishing each element of a prima facie case of discrimination to survive a motion to dismiss," but "it must at a minimum assert nonconclusory factual matter sufficient to [render its claims plausible]." EEOC v. Port Auth. of N.Y. & N.J., 768 F.3d 247, 254 (2d Cir. 2014). In particular, "what must be plausibly supported by facts alleged in the complaint is that the plaintiff is a member of a protected class, was qualified, suffered an adverse employment action, and has at least minimal support for the proposition that the employer was motivated by discriminatory intent." Littlejohn v. City of New York, 795 F.3d 297, 311 (2d Cir. 2015).

Plaintiff's disparate treatment claim fails because he has not plausibly alleged that he experienced an adverse employment action. In this circuit, an adverse employment action is a "'materially adverse change' in the terms and conditions of employment." Galabya v. N.Y.C. Bd. of Educ., 202 F.3d 636, 640 (2d Cir. 2000). A change in the terms and conditions of employment is not materially adverse unless it is "more disruptive than a mere inconvenience or an alteration of job responsibilities." Sanders v. N.Y.C. Human Rights Res. Admin., 361 F.3d 749, 755 (2d Cir. 2004) (quoting Terry v. Ashcroft, 336 F.3d 128, 138 (2d Cir. 2003)). "Examples of such a

8

change include 'termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices . . . unique to a particular situation.'" Id. (quoting Terry, 336 F.3d at 138).

Plaintiff asserts that he suffered adverse employment actions when he was repeatedly threatened with discipline, including termination of employment, as a result of his refusal to cut his hair. Compl. ¶ 80. But "[t]he vast majority of courts in this circuit have held that a threat alone does not constitute an adverse employment action." Tompkins v. Allied Barton Sec. Servs., No. 09-CV-1954, 2010 WL 3582627, at *5 n.6 (S.D.N.Y. Aug. 2, 2010) (collecting cases); accord Early v. Wyeth Pharms., Inc., 603 F. Supp. 2d 556, 574 (S.D.N.Y. 2009); see also Bowles v. N.Y.C. Transit Auth., No. 00-CV-4213, 2006 WL 1418602, at *10 (S.D.N.Y. May 23, 2006) ("In this Circuit, most courts that have faced the issue have decided that an unrealized threat of discipline or termination is not actionable under Title VII." (collecting cases)); Massie v. Ikon Office Solutions, Inc., 381 F. Supp. 2d 91, 99 (N.D.N.Y. 2005) (finding that after multiple warnings, "fear of being terminated [was] not an adverse employment action because of its lack of consequence"). Thus, these unrealized threats do not constitute adverse employment actions.

Plaintiff also alleges that he was subjected to daily inspections and monitoring to ensure compliance with Defendant's grooming standards. Compl. ¶¶ 32, 34, 95, Ex. G. But courts in this circuit have found that "excessive scrutiny" does not constitute an adverse employment action in the absence of other negative results. E.g., Honey v. County of Rockland, 200 F. Supp. 2d 311, 320 (S.D.N.Y. 2002) (collecting cases). The same goes for "close monitoring by a supervisor," Jaeger v. N. Babylon Union Free Sch. Dist., 191 F. Supp. 3d 215, 226 (E.D.N.Y. 2016), and

being subjected to inspections, see Roff v. Low Surgical & Med. Supply, Inc., No. 03-CV-3655, 2004 WL 5544995, at *7 (E.D.N.Y. May 11, 2004) ("[P]laintiff's allegation that her vehicle and personal belongings were searched . . . does not constitute an adverse employment action, as such conduct did not materially change the terms and conditions of her employment."). Accordingly, the inspection and monitoring Plaintiff experienced do not constitute adverse employment actions.

In addition, Plaintiff asserts that he suffered an adverse employment action when Defendant forced him to wear a hat and hairnet while on duty. Compl. ¶¶ 30–31, 35. An adverse employment action must lead to a materially adverse change in the terms and conditions of a plaintiff's employment, and "[b]eing forced to wear a hat while on duty does not, in and of itself, rise to" that level. Bailey v. Ares Grp., Inc., 803 F. Supp. 2d 349, 356 (D. Md. 2011).

But there is more to Plaintiff's allegation about having to wear a hairnet. Plaintiff indicates in his letter to the Mayor of Utica that "[a]fter a few work days of wearing a hairnet to work, I found that it was unsafe for me to operate my air tank while wearing it. I have refused to wear it since." Compl. Ex. H. Courts in this circuit have found that "'exposing a worker to dangerous or extreme work conditions may' constitute an adverse employment action in certain circumstances. Todoverto v. McDonald, No. 13-CV-4922, 2016 WL 3826281, at *11 (S.D.N.Y. July 7, 2016) (quoting McAllister v. Metro. Transit Auth., No. 13-CV-2060, 2013 WL 4519795, at *6 (E.D.N.Y. Aug. 26, 2013)); see also McAllister, 2013 WL 4519795, at *6 (finding that the defendant's refusal to fix an air conditioning unit where plaintiff worked, which led to plaintiff "working in extreme temperatures despite his heart condition," could constitute an adverse employment action); Edwards v. Metro-N. Commuter R.R. Co., No. 04-CV-1430, 2006 WL

10

2790402, at *16 (D. Conn. Sept. 27, 2006) ("[F]ailure to provide plaintiff with protective equipment which every other worker on plaintiff's gang had . . . could constitute an adverse employment action because it exposed plaintiff to potentially unreasonably dangerous working conditions.").

Conversely, courts have determined that incidents similar to or more serious than Plaintiff's did not constitute adverse employment actions. See, e.g., Todoverto, 2016 WL 3826281, at *11 (finding that an assault by a patient as a result of failure to address safety concerns did not rise to the level of an adverse employment action); Dhar v. N.Y.C. Dep't of Transp., No. 10-CV-5681, 2014 WL 4773965, at *7 (E.D.N.Y. Sept. 24. 2014) (finding that being forced to conduct an inspection in unsafe working conditions and other inspections in inclement weather could not arguably constitute adverse employment actions), aff'd, 630 F. App'x 14 (2d Cir. 2015). In any event, all of these cases are distinguishable from the present case because they involved plaintiffs who found themselves in situations that exposed them to dangerous conditions. Here, by contrast, Plaintiff does not specifically allege that he was ever forced to fight a fire with malfunctioning safety equipment. Thus, the safety concern raised by Plaintiff in his letter does not constitute an adverse employment action.

Finally, Plaintiff argues that the refusal to accept his harassment complaint and to investigate his claims constitute adverse employment actions. Compl. ¶¶ 27, 42. "[T]he Second Circuit has held that a complete 'failure to investigate a complaint of discrimination cannot be considered an adverse employment action' for the purposes of a retaliation claim." Nunez v. N.Y. State Dep't of Corr. & Cmty. Supervision, No. 14-CV-6647, 2015 WL 4605684, at *17 (S.D.N.Y. July 31, 2015) (quoting Fincher v. Depository Tr. & Clearing Corp., 604 F.3d 712,

721 (2d Cir. 2010)). Thus, "if a failure to investigate does not qualify as an adverse employment action under Title VII's broader definition of the term for retaliation claims, such failure plainly does not qualify under the stricter definition for discrimination claims." Id.

Here, Plaintiff contacted Rockwell to make a complaint, but was told that the reasonable accommodation policy for religious beliefs did not apply to the Utica Fire Department and that therefore she could not accept the discrimination complaint. Compl. ¶ 27. Nearly five months later, Plaintiff sent a letter to Rockwell detailing the continued harassment and his intent to initiate a complaint. Id. ¶ 38. It was after receiving this letter, along with several phone calls and personal visits, that Rockwell accepted Plaintiff's complaint. Id. ¶ 39. Plaintiff claims that Defendant did not conduct an investigation into his complaint, but as just discussed, such a failure to investigate does not constitute an adverse employment action. Nunez, 2015 WL 4605684, at *17. Thus, Rockwell's delayed acceptance of the complaint cannot constitute an adverse employment action.

### B.  Failure to Accommodate

 Under Title VII, "it is an unlawful employment practice 'for an employer not to make reasonable accommodations, short of undue hardship, for the religious practices of his employees and prospective employees.'" Zacharowicz v. Nassau Health Care Corp., 177 F. App'x 152, 154 (2d Cir. 2006) (quoting Trans World Airlines, Inc. v. Hardison, 432 U.S. 63, 74 (1977)). The term "religion" includes "all aspects of religious observance and practice, as well as belief." § 2000e(j). In this case, Plaintiff requested a reasonable accommodation for his observance of the Nazirite practice of not cutting one's hair. Compl. ¶¶ 19–20.

12

A failure-to-accommodate claim requires a plaintiff to show that "(1) she held a bona fide religious belief conflicting with an employment requirement; (2) she informed her employer of this belief; and (3) she was disciplined for failure to comply with the conflicting employment requirement." Mines v. City of New York/DHS, No. 11-CV-7886, 2013 WL 5904067, at *7 (S.D.N.Y. Nov. 1, 2013) (citing Knight v. Conn. Dep't of Pub. Health., 275 F.3d 156, 167 (2d Cir. 2001)). While the Second Circuit "has never defined 'discipline' within the context of the three-pronged religious discrimination test," several courts in this circuit have equated discipline with "adverse employment action." Siddiqi v. N.Y.C. Health & Hosps. Corp., 572 F. Supp. 2d 353, 370 (S.D.N.Y. 2008) (collecting cases). Because discipline is equivalent to an adverse employment action for purposes of a discrimination claim, and the Court has already concluded that Plaintiff did not suffer any adverse employment actions with respect to his discrimination claim, Plaintiff's failure-to-accommodate claim must be dismissed.

### C. Retaliation

A prima facie case of retaliation requires a plaintiff to demonstrate that "(1) [he] was engaged in protected activity; (2) the employer was aware of that activity; (3) [he] suffered a materially adverse action; and (4) there was a causal connection between the protected activity and that adverse action." Lore v. City of Syracuse, 670 F.3d 127, 157 (2d Cir. 2012). "The Supreme Court has held that in the context of a Title VII retaliation claim, an adverse employment action is any action that 'could well dissuade a reasonable worker from making or supporting a charge of discrimination.'" Vega v. Hempstead Union Free Sch. Dist., 801 F.3d 72, 90 (2d Cir. 2015) (quoting Burlington N. & Santa Fe Ry. Co. v. White, 548 U.S. 53, 57 (2006)). "This definition covers a broader range of conduct than does the adverse-action standard for

claims of discrimination under Title VII." Id.; see also White, 548 U.S. at 64 ("[T]he antiretaliation provision, unlike the substantive provision [forbidding discrimination], is not limited to discriminatory actions that affect the terms and conditions of employment.").

Defendant moves to dismiss Plaintiff's retaliation claim for two reasons: Plaintiff fails to allege an adverse employment action, and he fails to allege a causal connection between the protected activity and the alleged retaliation. Mem. at 18–19. The Court is not persuaded.

On or about January 17, 2015, Plaintiff first notified Wusik that he was a practicing Nazirite and requested that his religious beliefs be reasonably accommodated. Compl. ¶ 20. Four days later, Kelly ordered Plaintiff to cut his hair or face the possibility of being relieved of duty. Id. ¶ 22. Requesting a reasonable accommodation for religious beliefs is a protected activity, see Hajjar-Nejad v. George Washington Univ., 873 F. Supp. 2d 1, 22 (D.D.C. 2012) (noting that protected activity includes "requesting a reasonable accommodation based on religion"), and the order to Plaintiff to cut his hair constitutes an adverse employment action in the retaliation context. A reasonable person, "in the plaintiff's position, considering 'all the circumstances,'" would likely be dissuaded from engaging in protected activity if, after requesting a reasonable accommodation, he was ordered to violate a core tenet of his religion by cutting his hair. White, 548 U.S. at 71 (quoting Oncale v. Sundowner Offshore Servs., Inc., 523 U.S. 75, 81 (1998)). Additionally, the order for Plaintiff to cut his hair occurred only four days after the accommodation request, which is temporally proximate enough to show causation. See, e.g., Vlad-Berindan v. NYC Metro. Transp. Auth., No. 14-CV-10304, 2016 WL 1296212, at *7 (S.D.N.Y. Feb. 1, 2016) (noting that an approximately one-week gap between the protected activity and the adverse employment action "is enough, standing alone, to make a plausible

showing with respect to the [causation] element of a prima facie retaliation claim"), adopted by 2016 WL 1317700 (S.D.N.Y. Apr. 1, 2016). For these reasons, the Court will not dismiss Plaintiff's retaliation claim at this stage of the proceedings.

### D. Hostile Work Environment

To state a Title VII hostile work environment claim, a plaintiff must first demonstrate that she experienced harassment "sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." Alfano v. Costello, 294 F.3d 365, 373 (2d Cir. 2002) (quoting Perry v. Ethan Allen, Inc., 115 F.3d 143, 149 (2d Cir. 1997)). The plaintiff must also show "that a specific basis exists for imputing the objectionable conduct to the employer." Id. A hostile work environment claim has "objective and subjective elements: the misconduct shown must be 'severe or pervasive enough to create an objectively hostile or abusive work environment,' and the victim must also subjectively perceive that environment to be abusive." Id. at 374 (quoting Harris v. Forklift Sys., Inc., 510 U.S. 17, 21 (1993)). "As a general rule, incidents must be more than 'episodic; they must be sufficiently continuous and concerted in order to be deemed pervasive.'" Alfano, 294 F.3d at 374 (quoting Perry, 115 F.3d at 149); see also Redd v. N.Y. State Div. of Parole, 678 F.3d 166, 175–76 (2d Cir. 2012) ("Isolated incidents usually will not suffice to establish a hostile work environment . . . ."). In evaluating a hostile work environment claim, a court must have some "reason to believe" that the incidents were "motivated by the plaintiff's [protected characteristics]." Sanderson v. N.Y. State Elec. & Gas Corp., 560 F. App'x 88, 92 (2d Cir. 2014); see also Alfano, 294 F.3d at 374 (noting that, in order to state a "sex-based hostile work environment [claim] under Title VII, a plaintiff must demonstrate that the conduct occurred because of her sex").

15

Plaintiff alleges that for approximately six months, Defendant threatened to discipline him, ordered him to wear an ill-fitting baseball cap and hairnet, subjected him to daily inspections and monitoring, challenged and ridiculed his sincerely held religious beliefs, ignored his requests for a reasonable accommodation, and refused to accept his repeated requests to file an internal complaint. Compl. ¶¶ 20, 67, 95. Defendant argues that these allegations fail to state a plausible hostile work environment claim. Mem. at 11–18. The Court disagrees.

Plaintiff states that his supervisors repeatedly threatened him with discipline for not complying with grooming standards. Plaintiff was told he would be disciplined for noncompliance on three occasions. On January 21, 2015, Kelly ordered Plaintiff to cut his hair or face the possibility of being relieved of duty. Compl. ¶ 22. On January 23, 2015, a letter from Clark reiterated that Plaintiff would face discipline if he did not cut his hair. Id. ¶ 29. Lastly, Clark issued written orders on May 1, 2015, informing Plaintiff that he must restrain his hair to comply with grooming standards and that failure to do so would result in disciplinary action. Id. Ex. G.

Plaintiff also alleges that he was subjected to daily inspections, an allegation supported by Clark's orders stating that Plaintiff's "officer and the shift supervisor will monitor [his] appearance daily and submit a report to [Clark's] office stating that [he] is complying with this directive." Id. While Plaintiff does not provide further details about what these inspections entailed, the Court draws the reasonable inference that noncompliance would result in the disciplinary action threatened by his supervisors. Id.

In addition to the threats of discipline, the excessive scrutiny, and the daily monitoring of his appearance, Plaintiff's supervisors challenged and ridiculed his sincerely held religious

16

beliefs. For example, Plaintiff was told in a letter that "research" revealed that many Nazirites do not observe the practice of letting their hair grow out. Id. Ex. F. Another letter stated that "if it is determined you are not a Nazarite or have in fact never been a Nazarite, disciplinary action may also occur as a result of any deception." Id. Ex. G. And the Complaint recounts an incident in which Clark questioned Plaintiff about the Nazirite observance of not cutting one's hair. Id. ¶ 30. While several of these incidents did not explicitly involve Plaintiff' religion, they all stemmed from his attempts to obtain an accommodation for his religious beliefs. That gives the Court reason to believe these incidents were "motivated by the plaintiff's [religion]." Sanderson, 560 F. App'x at 92. For example, Clark accused Plaintiff of being "anti-establishment" while interrogating him about his Nazirite beliefs, Compl. ¶ 30, and after Wusik received an email from Plaintiff inquiring into the status of his harassment claims, he said to Plaintiff, "you have no respect for yourself or your father," then tapped him on the head with an envelope and said, "I don't understand guys like you." Id. ¶¶ 45–47.

Finally, Plaintiff alleges that he discovered it was unsafe to operate his air tank while wearing a hairnet. Id. Ex. H. According to Plaintiff, "[a]lthough Defendant initially denied and/or ignored Plaintiff's request for a reasonable accommodation based on safety concerns[,] Defendant never conducted a fit test to determine if the length of Plaintiff's head hair actually interfered with the proper function of the safety equipment." Id. ¶ 66. The Complaint does not indicate that a fit test was performed to determine whether it was safe to use the equipment while wearing a hairnet. Id. Courts have found that requiring employees to engage in dangerous tasks without appropriate safety equipment can contribute to the creation of a hostile work

environment. E.g., Gonzales v. Eagle Leasing Co., No. 13-CV-1565, 2014 WL 4794536, at *5 (D. Conn. Sep. 25, 2014).

Considering the totality of the circumstances, especially the potential safety hazard created by the hairnet requirement, these incidents are sufficiently severe and pervasive to state a plausible hostile work environment claim. Court have declined to dismiss hostile work environment claims premised on less egregious conduct than that alleged here. See Lebowitz v. N.Y.C. Dep't of Educ., No. 15-CV-2890, 2017 WL 1232472, at *14 (E.D.N.Y. Mar. 31, 2017) (finding that a teacher who was threatened with her job and license, was given negative ratings, had a door slammed in her face, and was bullied by other teachers and called a "disgrace" sufficiently alleged a hostile work environment); Brown v. City of New York, No. 10-CV-6491, 2011 WL 2693677, at *3, 7–8 (S.D.N.Y. July 11, 2011) (determining that two teachers stated a hostile work environment claim when they were allegedly the target of a principal's desire to staff positions with Jamaicans, which resulted in sixty-two unannounced pop-in visits to their classrooms and being called "incompetent"). Thus, the Court will not dismiss Plaintiff's hostile work environment claim.

**E. NYS HRL Claims**

Defendant argues that the Court should dismiss any state law claims under NYS HRL that correspond to dismissed Title VII claims. Mem. at 24. It is well established that "New York courts rely on federal law when determining claims under the New York Human Rights Law." Reed v. A.W. Lawrence & Co., 95 F.3d 1170, 1177 (2d Cir. 1996); accord Torres v. Pisano, 116 F.3d 625, 629 n.1 (2d Cir. 1997) (stating that the Second Circuit has "repeatedly noted that claims brought under New York State's Human Rights Law are analytically identical to claims

brought under Title VII"); Tyler v. Bethlehem Steel Corp., 958 F.2d 1176, 1180 (2d Cir. 1992)

("New York courts have consistently looked to federal caselaw in expounding the [New York]

Human Rights Law"). Courts regularly dismiss NYS HRL claims once the corresponding federal

claims have been dismissed. E.g., Olsen v. Suffolk County, No. 15-CV-4064, 2016 WL 5395846,

at *16 (E.D.N.Y. Sept. 27, 2016); Yu v. N.Y. State Unified Court Sys. Office of Court Admin.,

No. 11-CV-3226, 2013 WL 3490780, at *8 (S.D.N.Y. July 12, 2013); Schwarz v. York Coll.,

No. 06-CV-6754, 2011 WL 3667740, at *13 (E.D.N.Y. Aug. 22, 2011); Infante v. Ambac Fin.

Grp., No. 03-CV-8880, 2006 WL 44172, at *1 n.1 (S.D.N.Y. Jan. 5, 2006), aff'd, 257 F. App'x

432 (2d Cir. 2007). For this reason, the Court dismisses all state law claims in this action except

for the hostile environment and retaliation claims.

**F.  Leave to Amend**

At the outset, the Court rejects Plaintiff's request for amendment found at the end of his

Response. Resp. at 29.[4] This request fails to comply with the Local Rule governing motions for

leave to amend pleadings. L.R. 7.1(a)(4). Furthermore, the request is simply tacked onto the end

of an opposition brief, and "[i]t is within the court's discretion to deny leave to amend . . . when

leave is requested informally in a brief filed in opposition to a motion to dismiss." Corsini v.

Nast, 613 F. App'x 1, 4 (2d Cir. 2015) (quoting In re Tamoxifen Citrate Antitrust Litig., 466 F.3d

187, 220 (2d Cir. 2006), overruled on other grounds by FTC v. Actavis, Inc., 133 S. Ct. 2223

(2013)).

---

[4]  The page numbers for this document refer to those generated by the Court's electronic
filing system ("ECF").

Rule 15 does, however, command that "[t]he court should freely give leave [to amend] when justice so requires." Therefore, when a complaint is dismissed for the first time pursuant to Rule 12(c), leave to amend before reviewing the proposed amended pleading should typically be withheld only if amendment would be futile—namely, if it is clear from the facts alleged that the events in question cannot give rise to liability. Ricciuti v. N.Y.C. Transit Auth., 941 F.2d 119, 123 (2d Cir. 1991); see also, e.g., In re Aluminum Warehousing Antitrust Litig., 833 F.3d 151, 157 (2d Cir. 2016) (discussing affirmance of dismissal without leave to amend due to futility); Orchard Hill Master Fund Ltd. v. SBA Commc'ns. Corp., 830 F.3d 152, 156 (2d Cir. 2016) (noting that denial of leave to amend on futility grounds is subject to de novo review); Lorely Fin. (Jersey) No. 3 Ltd. v. Wells Fargo Sec., LLC, 797 F.3d 160, 191 (2d Cir. 2015) (holding that, by not allowing plaintiffs to submit a new pleading attempting to correct any deficiencies, the district court "violated the liberal spirit of Rule 15" (quoting Williams v. Citigroup, Inc., 659 F.3d 208, 214 (2d Cir. 2011))). In this case, Plaintiff's Complaint lacks detail in the factual allegations relevant to the disparate treatment and failure to accommodate claims. However, it is unclear whether this is because the facts themselves support Defendant's position, or because Plaintiff's lawyer simply failed to marshal the proper facts into the pleadings. Thus, the Court will allow Plaintiff one additional chance to move to amend his complaint, at which point Defendant may respond and the Court can assess the proposed amendment's viability and the other factors governing leave to amend.[5]

---

[5] Plaintiff should take particular note that this motion to amend must comply with the Local Rules, L.R. 7.1(a)(4), and must fully address the deficiencies identified in this Memorandum-Decision and Order as to any claim it wishes to pursue. Failure to do so will result in denial of the motion and the dismissal of his claims with prejudice. See, e.g., Burrowes v. Combs, 124 F. App'x 70, 71 (2d Cir. 2005) (affirming the district court's dismissal without

## V.    CONCLUSION

Accordingly, it is hereby:

**ORDERED**, that Defendant's Motion for Judgment on the Pleadings (Dkt. No. 11) is

**GRANTED in part** and **DENIED in part**; and it is further

**ORDERED**, that Plaintiff's disparate treatment and failure-to-accommodate claims are

dismissed; and it is further

**ORDERED**, that if Plaintiff wishes to proceed with his disparate treatment and

failure-to-accommodate claims, he must file a motion to amend his complaint, in accordance

with the Local Rules, within **thirty days** from the date of this Memorandum-Decision and Order;

and it is further

**ORDERED**, that the Clerk of the Court shall serve copies of this Memorandum-Decision

and Order on all parties in accordance with the Local Rules.

**IT IS SO ORDERED.**

DATED:        July 28, 2017
             Albany, New York

Lawrence E. Kahn
U.S. District Judge

---

further leave to amend after a previous amendment was unsuccessful).

21